IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MAY LIU,                              §
                                      §
            Plaintiff,                §
                                      §
VS.                                   §    CIVIL ACTION H-08-3116
                                      §
ARROW FINANCIAL SERVICES, LLC         §
and REGENT & ASSOCIATES, P.C.,        §
                                      §
            Defendants.               §

**OPINION AND ORDER**

Pending before the Court in the above referenced cause, arising in large part out of a collection lawsuit erroneously filed against Plaintiff May Liu allegedly in violation *inter alia* of the federal and Texas Fair Debt Collection Practices Acts, 15 U.S.C. § 1692 and Texas Finance Code §§ 392.301–.306 and 392.401, respectively, is Defendants Regent & Associates, P.C.'s ("Regent's") and Arrow Financial Services, LLC's ("Arrow's") motion for summary judgment (instrument #23).

After reviewing the motion, the briefing, the record, and the applicable law, the Court concludes the motion should be granted in part and denied in part.

**Standard of Review**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

-1-

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 317, 323 (1986). The substantive law governing the claims identifies the essential elements and thus indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 325 (1986).

Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant succeeds, the non-movant must come forward with evidence such that a reasonable party could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114

(5th Cir. 1993).   Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).   Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'"   *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007).   Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden.   *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).   Nor are pleadings competent summary judgment evidence.   *Little*, 37 F.3d at 1075; *Wallace v. Texas Tech. U.*, 80 F.3d 1042, 1045 (5th Cir. 1996).

A district court may not make credibility determinations or weigh evidence when deciding a summary judgment motion.   *Chevron Phillips*, 570 F.3d 606, 612 n.3 (5th Cir. 2009), *citing EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 652 (5th Cir. 1999).   Nor does the court have to sift through the record in search of evidence to support opposition to summary judgment.   *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

**Relevant Law**

The federal Fair Debt Collection Practices Act was enacted "to

eliminate abusive debt collection practices . . . and . . . to protect consumers against debt collection practice abuses." 15 U.S.C. § 1692e. It is a strict liability statute, so the consumer does not have to prove intentional conduct by the debt collector. *See, e.g., Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010); *Johnson v. Riddle*, 443 F.3d 723, 728 (10th Cir. 2006); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996). Under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692k(a), 1692e, and 1692f, a debt collector is subject to civil liability if it "use[s] any false, deceptive, or misleading representation or means in connection with the collection of any debt" or if it "use[s] unfair or unconscionable means to collect or attempt to collect any debt."

Section 1692(k) states that "any debt collector who fails to comply with any provision of [the Act] with respect to any person is liable to such person . . . ." A person who does not owe money but is subject to improper practices by a debt collector is covered by the statute. *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982)(concluding that the plaintiff had standing to sue under the statute because a debt was erroneously attributed to him), *cited for that proposition by McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992. The statute imposes liability for "conduct the natural consequence of which is to harass, oppress,

or abuse any person in connection with the collection of a debt."
15 U.S.C. § 1692(d).  The most widely used, objective standard for
determining alleged violations of the statute is the likely effect
of the debt collector's communication or conduct on the least
sophisticated consumer.  *See, e.g.,* Baker v. G.C. Servs. Corp*., 677
F.2d at 778; Taylor v. Perrin Landry, deLaunay and Durand*, 103 F.3d
1232, 1236 (5th Cir, 1997); *Ruth v. Triumph Partnerships*, 577 F.3d
790, 799 (7th Cir. 2009); *Harman v. Great Seneca Fin. Corp.*, 569
F.3d 600, 611-12 (6th Cir. 2009); *Reichert v. Nat'l Credit Systems,
Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008); *United States v. Nat'l
Fin. Services, Inc.*, 98 F.3d 131 (4th Cir. 1996); *Clomon v. Jackson*,
988 F.2d 1314, 1318 (2d Cir. 1993 (and cases cited therein); *Smith
v. Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir. 1992); *Graziano
v. Harrison*, 950 F.2d 107, 111 (3d. Cir. 1991).

Lawyers regularly engaged in consumer debt collection on
behalf of a creditor client may be liable as "debt collectors"
under the definition in the statute and thus subject to the FDCPA.
15 U.S.C. § 1692a(6); *Heintz v. Jenkins*, 514 U.S. 291 (1995); *In
re Eastman*, 419 B.R. 711, 727 (Bankr. W.D. Tex. 2009).

The statute additionally provides an affirmative "bona fide
error" defense that insulates a debt collector from liability if he
"shows by a preponderance of the evidence that the violation was
not intentional and resulted from a bona fide error not
withstanding maintenance of procedures reasonably adapted to avoid

any such error." 15 U.S.C. § 1692k(c). *See, e.g., Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 536 (7th Cir. 2005); *Johnson v. Riddle*, 443 F.3d 723, 727 (10th Cir. 2006). Thus to use the defense, the defendant bears the burden to show (1) that the presumed statutory violation was not intentional (2) and resulted from a bona fide error, and (3) that the defendant maintained procedures reasonably adapted to avoid any such error. *Kort*, 394 F.3d at 537, *citing Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997). The debt collector only has to show that its violation of the statute was unintentional, not that its actions were unintentional. *Id.* at 537, *citing Nielsen v. Dickerson*, 307 F.3d 62,. 641 (7th Cir. 2002)(debt collector "may avail itself of the bona fide error defense because it had no intent to violate the FDCPA, although its actions were deliberate"), and *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)("The debt collector must only show that the violation was unintentional, not that the communication itself was unintentional. To hold otherwise would effectively negate the bona fide error defense."); *Riddle*, 443 F.3d at 728 (joining the Sixth and Seventh Circuits in concluding that § 1692k(c) "requires proof that '*the violation*' was not intentional, as opposed to proof that 'the conduct' [trying to collect the debt] was not intentional."). [T]he fact that violations were innocuous and not abusive may be considered only in mitigating liability, and not as defenses under the Act." *Taylor*

*v. Perrin Landry, deLaunay and Durand* 103 F.3d at 1239.   The bona fide defense shields a debt collector from liability resulting from a clerical error.   *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1034 (6th Cir. 1992).

A "bona fide" error is one "'1.  Made in good faith, without fraud" and "2. Sincere; genuine.'"   *Kort,* 394 F.3d at 538, *citing Black's Law Dictionary* 168 (7th ed. 1999).

The bona-fide and the procedures-reasonably-adapted-to avoid-error prongs constitute objective tests and are often merged. *Riddle*, 443 F.3d at 729, *citing inter alia Kort*,  394 F.3d at 358. The procedures component involves a two-step analysis:  (1) whether the debt collector "maintained--actually employed or implemented-- procedures to avoid errors," and (2) whether the procedures were "reasonably adapted" to avoid the error at issue.   *Id.*, *citing Jenkins v. Heintz*, 124 F.3d at 835 (procedures prong satisfied where the debt collector actually employed both general procedures to comply with the statute and specific procedures designed to avoid the error at issue).  Procedures  adapted to avoid a clerical error might  include  sending  employees  and  staff  to  training seminars or subjecting employees and staff to compliance testing. *Id.* at 730.   In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 502 F. Supp. 2d 686, 695 (N.D. Ohio 2007), *aff'd*, 538 F.3d 469 (6th Cir. 2008), *cert. granted*, 129 S. Ct. 2863 (2009), the district court noted the averment of senior principal of the debt

collector law firm regarding his substantial efforts to comply with the statute:

> Defendant law firm has designated it senior principal, Richard McNellie, as the individual responsible for compliance with the FDCPA; McNellie regularly attends conferences and seminars that focus on FDCPA issues; the firm subscribes to "Fair Debt Collection," a part of "The Consumer Credit and Legal Practice Series," together with the supplements thereto; McNellie routinely distributes copies of cases relevant to the firms practices and procedures to all attorneys at the firm; all new employees, attorneys and nonattorneys are advised of the firm's obligations under the FDCPA and provided with the firm's FDCPA Procedures Manual, and encouraged to seek McNellie's advice with questions regarding the FDCPA; McNellie conducts a mandatory meeting at least twice a year for all available employees wherein FDCPA issues and developments are discussed . . . .

The Texas Debt Collection Act gives a consumer the right to sue for "threats, coercion, harassment, abuse, unconscionable collection methods, or misrepresentations made in connection with the collection of a debt." *T&S Auto Sales, Inc. v. Anderson*, No. 03-99-00354, 2000 WL 140935, *1 n.2 (Tex. App.--Austin Feb. 3, 2000), *citing* Tex. Fin. Code Ann. §§ 392.301-392.404 (West 1998). A violation of the Texas Debt Collection Act is actionable under the DTPA, which in turn permits a civil action for false, misleading, or deceptive acts taken in the conduct of trade of commerce. *Id.* nn. 1&2, *citing* § 392.404 and Tex. Bus. & Com. Code Ann. §§ 17.41-17.63. The structure of the Texas statute is modeled on the structure of the federal statute and the two statutes should be similarly construed. *In re Eastman*, 419 B.R. at 731, *citing Prophet v. Joan Myers, Myers & Assocs., P.C.*, 645 F. supp. 2d 614,

617 (S.D. Tex. 2008).

**Allegations in Plaintiff May Liu's**

**Amended Complaint (#12)**

Plaintiff asserts that on May 6, 2008 Arrow, represented by the law firm Regent, filed a lawsuit against Plaintiff in the Harris County Court at Law No. 2, Cause No. 918372, for breach of contract and a suit on a sworn account arising out of an allegedly delinquent credit card debt owed by Plaintiff.[1]  Plaintiff answered the suit, denying that she was the party responsible for the debt, and alleged counterclaims against Arrow relating to its conduct in

---

[1] In her Response (#33) to the motion for summary judgment, Plaintiff explains that someone else opened a dental care charge account in her name.  In December 2006 she began receiving phone calls from Ahn Regent's office on behalf of Arrow about the unpaid account.  In January 2007 she contacted the credit card company associated with the account and was told that it was opened in her name and used for dental care.  She told the credit card company that she was not the person who opened the account, and it responded that it would open an investigation.  That same month Plaintiff learned that the fraudulent account had been reported to Equifax, a credit reporting agency.  She filed a dispute with Equifax, and she reported the fraudulent account and identity theft to the Sugarland Police Department on January 27, 2007.  Arrow filed this suit sixteen months later, on May 6, 2008.  Plaintiff complains that she was forced to hire an attorney and pay attorney's fees to get the lawsuit dismissed.  She further states that she lost several days of work because of the wrongfully filed suit.  *See* Liu affidavit (also stating that she received between 10-20 harassing phone calls over a two-week period), Ex. A to #33.  She further points out that Defendants did not dismiss the suit until July 8, 2008, sent her written discovery requests, and objected to her attempts to take the deposition of Jacquelyn Younan, the representative who provided an affidavit swearing to the validity of the account when Arrow originally filed the lawsuit.  #33, Ex. B. attached to Arrow's original state court petition.

trying to collect the debt from Plaintiff.  On July 8, 2008 Arrow filed a Notice of Non-Suit and Dismissal with Prejudice.  Plaintiff amended her counterclaims, alleging damages that exceeded the jurisdictional limits for the County Court at Law 2, so they were dismissed to allow her to replead in Harris County District Court. On September 5, 2008 Plaintiff filed her First Amended Petition against Arrow in the 269th Judicial District Court of Harris County, Texas.  Arrow removed the case on October 21, 2008.

In that action, now pending before this Court, Plaintiff alleges against Defendants claims for fraud (Defendants made a material representation to Plaintiff that payment on an alleged contract was due and owing and was Plaintiff's obligation), bad faith (in filing suit against Plaintiff), libel under Texas Civil Practices & Remedies Code § 73.001 (in reporting that Plaintiff owed a delinquent debt to a credit-reporting agency), malicious prosecution (in filing the lawsuit against Plaintiff), negligence (in filing the frivolous lawsuit and then failing to discontinue it upon reasonable notice that Plaintiff was not the responsible party for the debt) and gross negligence, negligent misrepresentation (in stating that Plaintiff was the responsible party), violations of the Fair Debt Collection Practices Act (15 U.S.C. §§ 1692, *et seq.*),[2] violations of the Fair Credit Reporting Act (15 U.S.C. §§

---

[2] The Federal Debt Collection Act permits a victim of abusive, harassing, unfair, false or misleading debt collection practices to recover actual damages, additional damages, and attorneys' fees.

1681, *et seq.*),[3] violations of the Texas Debt Collection Practices
Act (Tex. Fin. Code Ann. §§ 392.001, 392.301-.404)[4], and violations
of the Texas Deceptive Trade Practices-Consumer Protection Act
("DTPA")(Texas Business and Commerce Code Ann. § 17.41-.63).[5]

### Defendants' Motion for Summary Judgment (#23)

Defendants concede that the collection lawsuit was erroneously
filed against Plaintiff, but argue that once they discovered that
error, they had the collection action dismissed.  Currently they
face the claims, originally counterclaims, in the subsequent
separate action filed by Plaintiff in state court against them.

Defendants assert that Arrow, in a good faith belief that the
claim on the account was valid, purchased from GE Money Bank a Care
Credit credit card account reflecting that Plaintiff owed GE Money

---

[3] The Fair Credit Reporting Act requires "consumer reporting
agencies" to adopt reasonable procedures for compiling and
dispersing credit information and other information "in a manner
which is fair and equitable to the consumer with regard to the
confidentiality, accuracy, relevancy, and proper utilization of
such information."  15 U.S.C. § 1681(b).

[4] The Texas Debt Collection Practices Act permits a consumer
to sue for threats, coercion, harassment, abuse, unconscionable
collection methods, or misrepresentations made in connection with
the collection of a debt.  A violation under it is actionable under
the Texas Deceptive Trade Practices Act.  Tex. Fin. Code Ann. §
392.404(a).  A prevailing plaintiff may recover actual damages,
attorneys' fees, and at least $100 for each violation.  *Id.* at §
392.403.

[5] The DTPA provides a civil cause of action to consumers for
false, misleading or deceptive acts taken in the conduct of trade
or commerce.  A prevailing consumer may recover actual damages,
damages for mental anguish, and attorneys' fees.

Bank for what appeared to be an open and suit-worthy sworn account
(the "Liu account").  Therefore Arrow filed suit against Plaintiff
in accordance with procedures.  After Plaintiff filed her answer
denying her responsibility for the debt and her counterclaims,
Arrow asked GE Money Bank for additional documents relating to the
claim and about the fraud claim.  Arrow was told that GE Money
Bank's records showed that GE Money Bank had purchased back Liu's
account from Arrow.  Investigating further, Arrow learned that in
February 2007 GE Money Bank had sent to Arrow a list of accounts to
buy back, including the Liu account, but in a clerical error, an
Arrow employee failed to place six of these buyback accounts in a
"hold" status, including the Liu account.  As a result the Liu
account remained open and subject to further collection activity.
Defendants attach to their motion an affidavit from Lavonia
Swanson, Supervisor, Client Services for Arrow, to establish that
normally an account subject to a buyback request will be removed
from an "open" disposition and collection activity on it would
cease.

Because it is significant here, the Court quotes from
Swanson's affidavit in relevant part, describing Arrow's normal
procedure and what happened in this instance:

> In the event that an account was included in a sale
> file but should not have been, Arrow will typically
> receive an email from its sellers, like GE Money Bank,
> requesting to buyback an account.  Such emails would be
> directed to Arrow's Client Services department.  A seller
> may buyback an account for a variety of reasons,

including bankruptcy, that the account is the subject of fraud, or that the account was previously paid, to provide a few examples.  The buyback request from the seller includes the account information, as well as the reason the seller is requesting to buyback the account. Upon receipt of the buyback request from the seller, an Arrow Client Services Representative will review the account to ensure that the account is eligible for buyback based on criteria provided in the purchase contract and the current status of the account.  Once the account has been deemed as "eligible for buyback," the Client Services Representative moves the account to a "hold" status in ARROW's collection system.  If the account had been placed with a law firm or another collection agency, it would be recalled at that time in order to cease collection activity on the account subject to the buyback.  At the beginning of each month, an automated process run by the IT department identifies accounts that were placed in a "hold" status the previous month due to a buyback request from the Seller and removes the accounts from ARROW's open accounts list. The buy back is then processed and the account is closed on Arrow's system.

After GE Money Bank sold the Liu account to ARROW, on or about February 5, 2007, it later notified Arrow that it would buyback the Liu Account along with fifteen other accounts for various reasons.  With respect to the Liu account, GE Money Bank stated that the reason for the buyback was that the account was a "fraud" account.

In this particular instance, due to a clerical error, the Client Services Representative assigned to handle buyback request from the Seller failed to place six of the sixteen accounts in a "hold" status. Therefore those six accounts remained in an open, working disposition.  One of those six accounts was the Liu Account.  As a result, although Arrow intended to cease collection activity on the subject account due to the buyback request from GE Money Bank, the account was not timely moved to a non-working disposition to process the buyback.  Thereafter, because the Liu Account remained in an open status, the account was eventually placed with a law firm for further collection activity, leading to the lawsuit filed against Plaintiff.

The [Arrow] representative who failed to process the buyback request of the Liu account did respond to GE Money Bank, advising that the buybacks had been processed, even though six had not been. As a result, GE Money Bank thought it had the account in house, even

though it remained in open disposition with Arrow.
Had proper procedure at Arrow been followed, Defendants assert, the
lawsuit would not have been filed.

Moreover, emphasize Defendants, as soon as Arrow discovered
the error, it instructed Regent to nonsuit the case against
Plaintiff.  *See* attached Affidavit from Anh Regent.  The lawsuit
against Plaintiff was only pending from May 6, 2008 to July 8,
2008.

Asserting the statutory affirmative defense, Defendants argue
that the violations of the Fair Debt Collection rules were an
inadvertent clerical mistake, made unintentionally and as a result
of a bona fide error, despite procedures in place to prevent such,
and thus they are not liable under the federal or state Fair Debt
Collections Practices Acts.

As for the other claims against them, Defendants contend that
the fraud[6] and negligent misrepresentation[7] claims fail because, as

---

[6] To prevail on a fraud claim a plaintiff must show (1) that
a material misrepresentation was made, (2) the representation was
false, (3) when the misrepresentation was made, the speaker knew it
was false or made it recklessly without any knowledge of the truth
and as a positive assertion, (5) the plaintiff acted in reliance on
the representation, and (6) the plaintiff thereby suffered injury.
*In re Firstmerit Bank, N.A.*, 52 S.W. 3d 749, 758 (Tex. 2001).

[7] The elements of a negligent misrepresentation cause of
action are (1) the defendant made a representation in the course of
his business or in a transaction in which he had a pecuniary
interest; (2) the defendant gave false information for the guidance
of others in their business; (3) the defendant did not exercise
reasonable care or competence in obtaining or communicating the
information; and (4) the plaintiff suffered pecuniary loss by

shown by Swanson's affidavit, Defendants were not aware, due to the above mentioned clerical error, that the Liu account had been bought back by the original account holder and therefore Plaintiff cannot show that when the alleged false representation that the account was suit worthy was made, Defendants knew that it was false and acted knowingly or recklessly.  Nor does Plaintiff show that she acted in reliance on the false representation and the lawsuit; instead she contested it from the beginning and filed an answer denying she owed the debt and filed a counterclaim.

As for Plaintiff's bad faith claim,[8] Defendants maintain that

───────────────

justifiably relying on the representation. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W. 2d 439, 442 (Tex. 1991)(adopting the standard set out in the *Restatement (Second) of Torts* § 552 (1977)).

[8] To prevail on her claim that Defendants filed their pleadings in bad faith, warranting sanctions under Texas Rule of Civil Procedure 13, Plaintiff states that she must prove (1) an attorney, a represented party, or both, (2) filed pleadings (3) that are groundless and brought in bad faith, (4) or that are groundless and brought to harass.  *Parker v. Walton*, 233 S.W. 3d 535, 539 (Tex. App.--Houston [14th Dist.] 2007).  Since the filing was in Texas state court, her claim is brought under Texas Rule of Civil Procedure 13 and Section 10.004 of the Texas Civil Practice and Remedies Code.  Rule 13 defines "groundless" as having "no basis in law or fact and not warranted by good faith argument for extension, modification, or reversal of existing law."  *See* Plaintiff's Response, #33 at 2, ¶ C.1.

The federal counterparts for her claim would be Federal Rule of Civil Procedure 11 and/or 28 U.S.C. § 1927.  Rule 11 instructs district courts to impose sanctions against a litigant who signs frivolous or abusive pleadings.  In relevant part, Rule 11 provides

By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge,

they have established that the lawsuit was filed in good faith and
was only due to a clerical error.

_____

     information, and belief, formed after an inquiry
     reasonable under the circumstances:

        (1) it is not being presented for any improper
        purpose, such as to harass, cause unnecessary
        delay, or needlessly increase the cost of
        litigation;

        (2) the claims, defenses, and other legal
        contentions are warranted by existing law or
        by a nonfrivolous argument for extending,
        modifying, or reversing existing law or for
        establishing new law;

        (3) the factual contentions have evidentiary
        support or, if specifically so identified,
        will likely have evidentiary support after a
        reasonable opportunity for further
        investigation or discovery; and

        (4) the denials of factual contentions are
        warranted on the evidence or, if specifically
        so identified, are reasonably based on belief
        or a lack of information.

*See generally Thomas v. Capital Security Services, Inc.*, 836 F.2d
866 (5th Cir. 1988).
     Under 28 U.S.C. § 1927, any party "who so multiplies the
proceedings in any case unreasonably and vexatiously maybe required
by the court to satisfy personally the excess costs, expenses, and
attorneys' fees reasonably incurred because of such conduct."  The
statute further requires "that there be evidence of bad faith,
improper motive, or reckless disregard of the duty owed to the
court."  *Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th
Cir. 1998).
     Furthermore, federal courts have the inherent power "to manage
their own affairs so as to achieve the orderly and expeditious
disposition of cases," which includes the power to sanction "bad
faith or willful abuse of the judicial process."  *Gonzalez v.
Trinity Marine Group, Inc.*, 117 F.3d 894, 898 (5th Cir. 1997)

As for Plaintiff's claim of libel and defamation[9] for reporting to a credit reporting agency that Plaintiff owed a debt, Defendants insist that they never reported the subject account to any credit reporting Agency, as evidenced by their two affidavits. Thus they never published a statement, the first element of such a claim.

Similarly, because they never reported the subject account to the credit bureaus as a delinquent collections amount, they cannot be liable under the Fair Credit Reporting Act.

The only basis here for a violation of the Texas DTPA is Plaintiff's allegation that Defendants violated the Texas Debt Collection Practices Act, to which they have demonstrated that a bona fide error was made when the lawsuit was filed. So they insist that they did not violate the Texas Debt Collection Practices Act and therefore did not violate the Texas DTPA.

Plaintiffs have also claimed that Defendants were negligent and grossly negligent[10] in "instituting Cause No. 918,372 in Harris

---

[9] The elements of a defamation claim are that the defendant (1) published a statement, (2) that was defamatory, (3) while acting with either actual malice, if the plaintiff was a public official, or with negligence if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV v. McLemore*, 978 S.W. 2d 568, 571 (Tex. 1998).

[10] To prevail on a negligence claim, Plaintiff must show (1) a legal duty owed by Defendants to Plaintiff (2) a breach of that duty; and (3) damages proximately caused by the breach. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W. 3d 778, 782 (Tex. 2001). To determine if a defendant owes a plaintiff a duty, a court examines several factors including foreseeability, risk, and likelihood of

County Court at Law No. 2 and in failing to discontinue the lawsuit upon reasonable notice."  Defendants respond that they have found no authority to support a claim for negligently filing a lawsuit under Texas law.

As for Plaintiff's malicious prosecution claim,[11] Defendants

---

injury balanced against the social utility of the defendant's conduct, the burden on the defendant to guard against injury, and the consequences of placing the burden on the defendant.  *Lefmark Mgmt. Co. v. Old,* 946 S.W. 2d 52, 59 (Tex. 1997).  The court as a matter of law determines if a duty exists.

A cause of action for gross negligence can yield exemplary damages.  Tex. Civ. Prac.& Rem. Code Ann. § 41.003(a).  To prove a defendant's negligence was gross negligence, a plaintiff must show (1) that viewed objectively from the actor's standpoint, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) that the actor must have had actual, subjective awareness of the risk involved, but nevertheless have proceeded in conscious indifference to the rights, safety or welfare of others.  *Mobil Oil Corp. v. Ellender*, 968 S.W. 2d 917, 921 (Tex. 1998).  "Extreme risk" does not mean "a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff."  *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W. 3d 778, 785 (Tex. 2001).  "What separates ordinary negligence from gross negligence is the defendant's state of mind; in other words, the plaintiff must show that the defendant knew about the peril but his acts or omissions demonstrate that he did not care."  *Louisiana-Pacific Corp. v. Andrade*, 19 S.W. 3d 245, 246-47 (Tex. 1999).  Although a defendant "cannot be grossly negligent without being negligent," evidence of simple negligence is not sufficient to prove either the objective or subjective elements of gross negligence.  *Trevino v. Lightning Laydown, Inc.*, 782 S.W. 2d 946, 949 (Tex. App.--Austin 1990, writ denied).

[11] Defendants point out that the elements of a civil malicious prosecution claim are (1) the institution or continuation of civil proceedings, (2) by or at the insistence of Defendants, (3) malice in the commencement of the proceedings, (4) lack of probable cause for the proceeding, (5) termination of the proceeding in plaintiff's favor, and (6) special damages.  *Texas Beef Cattle Co. v. Green*, 921 S.W. 2d 203, 207-09 (Tex. 1996).  "It is not enough to have suffered only ordinary losses incident to defending a civil

argue that Plaintiff has failed to show malice on the part of Defendants in commencing the lawsuit, and that, contrary to Plaintiff's allegations, the lawsuit was dismissed as soon as the bona fide error was discovered, only two months after it had been initiated; thus Plaintiff never prevailed in the proceeding, a key element of the cause of action.   Nor has Plaintiff pleaded or demonstrated entitlement to the recovery of special damages.

## Plaintiff's Response

For summary judgment evidence Plaintiff submits the same affidavits of Jacquelyn Younan and Lavonia Swanson provided by Defendants, as well as her own affidavit establishing that she immediately contacted her credit card company to dispute the charges on the account as fraudulent, that the fraudulent account was reported to the credit-reporting agency Equifax, that she was forced to dispute it with Equifax, and that she relied upon misrepresentations made to her in Defendants' original petition and supporting affidavit and was forced to hire counsel to defend herself.

Plaintiff contends that Defendants' bona fide error

---

suit, such as inconvenience, embarrassment, discovery costs, and attorney's fees.  The special injury requirement is not satisfied by the mere filing of a lawsuit; there must be some physical interference with the claimant's person or property in the form of an arrest, attachment, injunction or sequestration." *American Bd. of Obstetrics and Gynecology, Inc. v. Yoonessi*, 286 S.W. 3d 624, 629 (Tex. App.--Dallas 2009), *citing Texas Beef*, 921 S.W. 2d at 208-09.

affirmative defense fails for several reasons.  She maintains that Defendants' evidence shows that they did not have reasonable procedures in place to prevent what happened to Liu from happening. Swanson's affidavit establishes that Liu's account was one of six, out of a batch of sixteen, that were erroneously not placed on a "hold" status; i.e, a failure rate of 37.5% does not constitute a "reasonable" procedure.  At the very least, there is a fact issue to preclude summary judgment.  Moreover, to determine whether an error is "bona fide" requires a fact intensive inquiry that bars summary judgment.[12]  Furthermore, according to Swanson's affidavit, not only did the Arrow employee fail to place six accounts in "hold" status to prevent collection actions from being taken, but then its Client Services Representative advised the seller, GE Money Bank, that the Liu account had been bought back by the seller when it had not been, a "nonclerical" error.  Moreover, Defendants had knowledge that the account was fraudulent on February 5, 2007,

---

[12] *See, e.g., Riddle*, 443 F.3d at 729 ("To be entitled to a bona fide error defense, a debt collector's error must be bona fide and he must have maintained procedures reasonably adapted to avoid error.").  A "Defendant's intent and whether the error was bona fide are classic issues of fact, inappropriate for resolution on summary judgment." *Gaisser v. Portfolio Recovery Associates, LLC*, 593 F. Supp. 2d 1297, 1301 n.2 (S.D. Fla. 2009), *quoting Niven v. National Action Financial Services, Inc.*, No.07-cv-1326, 2008 WL 4190961, *3 (M.D. Fla. Sept. 10, 2008); *Gill v. Kostroff*, 82 F. Supp. 2d 1354, 1360 (M.D. Fla. 2000)("The inquiry into whether a debt collector's procedures are reasonable is, 'by its nature, fact-intensive, and should therefore be left to the jury.'"), *quoting Narwick v. Wexler*, 901 F. Supp. 1275, 1282 (N.D. Ill. 1995).

when GE Money Bank informed Arrow that it would buy back the Liu account, but they waited for sixteen months and only then filed their lawsuit on May 6, 2008.   She challenges Defendants' characterization of their errors as "clerical."  Without citing any examples, she insists that for purposes of the bona fide error defense courts have determined that the term is limited to such errors as transposition of numbers.

Because of material fact issues in the bona fide error defense, Liu insists that summary judgment on those claims tied into the federal statute, i.e., her DTPA and Texas Debt Collections Act claims, should be denied also.

Regarding the third element of her fraud claim, Plaintiff maintains she does present evidence of Defendants' knowledge of falsity.  Lavonia Swanson's affidavit states that she was not "aware" that the Liu account was not eligible for collection due to a clerical error.  Yet the same affidavit states that sixteen months before they filed suit against Plaintiff, Defendants were informed on February 5, 2007 that GE Money Bank would be buying back the Liu Account, thus making it ineligible for collection. Swanson Affid., #33, Ex. C at 3.  Younan's affidavit, dated February 27, 2008 and attached to the Original Petition in the underlying suit, states that the account was valid and delinquent at the time the original lawsuit was filed.  Thus their own affidavits create a fact issue as to what they knew when they filed

-21-

their lawsuit.  The applicable standard for fraud is "recklessness," not "awareness."  A defendant makes a representation "recklessly" if he makes it without any knowledge of its truth and makes it as a positive assertion of fact.  *Johnson & Higgins, Inc. v. Kenneco Energy*, 962 S.W. 2d 507, 526–27 (Tex. 1998)("In other words, a representation is recklessly made if the speaker knows that he does not have sufficient information or basis to support it, or if he realizes that he does not know whether or not the statement is true. [citations omitted]").

Plaintiff insists she relied on Defendants' misrepresentations, as evidenced by her being forced to hire counsel to defend herself in the lawsuit, for purposes of her negligent misrepresentation claim.  Regarding her bad faith claim, she reiterates that Defendants knew the lawsuit that they filed against her was groundless at the time they filed it, but they filed it anyway.  She maintains that summary judgment is inappropriate because there is a material fact issue regarding the groundlessness of the pleadings and the extent of Defendants' knowledge of the facts surrounding the lawsuit at the time it was filed.  She argues that had Defendants conducted a reasonable inquiry or evaluated their claims against Plaintiff, they would rapidly have learned they were baseless.

For purposes of her libel claim, Plaintiff also claims that there is a fact issue about whether Defendants reported

("published") the fraudulent account to Equifax.   Despite Defendants' denial, Plaintiff testified that she contacted Equifax and it told her that the delinquent account had been reported to it.   She therefore had to file a dispute with Equifax to have the black mark removed from her credit record.   For the same reason, summary judgment is not appropriate for her Fair Credit Reporting Act claim.

Plaintiff explains that she is not claiming negligence in Defendants' filing of the lawsuit; the breach of duty is Defendants' failure to investigate before filing suit and their admitted mistakes in handling the fraudulent Liu account.   There are material issues of fact on each of the elements of the negligence claims.   Moreover, Defendants have not challenged any element of her gross negligence claims, but merely insisted that Texas does not recognize such a cause of action.   She insists there are material issues of fact as to whether Defendants act or omission, viewed objectively from their point of view at the time it occurred, involved an extreme risk of harm to others or whether Defendants had actual subjective awareness of the risk, but proceed with conscious indifference to the rights, safety or welfare of others.

## Court's Ruling

Defendants do not contend that they did not violate the Fair Debt Collections Practices Act.   Instead Defendants' motion for

summary judgment on the Fair Debt Collections Practices Act, the Texas Debt Collection Act, and the DTPA is based upon establishing an affirmative bona fide error defense.  They maintain that their error in suing Plaintiff was an unintentional clerical error and that they have demonstrated that they maintain reasonable procedures to remove accounts from an open disposition when a seller seeks to buy back an account and to prevent such an error.

The Fair Debt Collection Practices Act does not define "clerical error."  Neither party has cited legal authority for a clear definition, nor has the Court been able to find a definition in case law specifically addressing the term in that statute.  Thus it turns to other legal authority to get a sense of how that term is construed generally.

*Black's Law Dictionary* defines "clerical error" as

An error resulting from a minor mistake or inadvertence, especially in writing or copying something on the record, and not from judicial reasoning or determination.  Among the boundless examples of clerical errors are omitting an appendix from a document; typing an incorrect number; mistranscribing a word; and failing to log a call.

*Black's Law Dictionary*, (7th ed. 1990).

Several courts have defined "clerical error" in the context of the Section 504(d) of the Tariff Action of 1930, as amended, 19 U.S.C. § 1504(d).  For instance in *Yamada v. United States*, 26 C.C.P.A. 89, No. 4130, 1938 WL 4052 (C. & P. App. 1938), a supervisor at a brokerage firm gave a duress entry certificate to his employee broker and told him to file it with one hundred

entries for an importer.  The broker carelessly, inadvertently or mistakenly attached a different, incorrect form to thirty-five of the entries.  Among the issues before the *Yamada* court was whether the facts showed that a clerical error was made  Examining cases involving similar legislation regarding entry of imported merchandise to define "clerical error," the *Yamada* court quoted from *Morimura Bros. v. U.S.*, 160 F. 280, 281 (C.C.S.D.N.Y. 1908);

> "Clerical error implies negligence or carelessness; but the question is:  Whose is the negligence?  If it is that of a 'clerk, writer, or copyist,' it is clerical error. Century Dictionary.  The expression assumes that the mistake or negligence or carelessness is that of one engaged in the subordinate service of transcription, copying, or comparison; a labor not requiring original thought.  It seems to me that the mistake in this case was clearly clerical, and furthermore, that it is the sort of error correction of which is not harmful to the administration of the customs laws, and relief from which has frequently been granted by the board itself."

*Yamada*, 26 C.C.P.A. at 94, 1928 WL 4052 at *5.  *See also PPG Industries, Inc. v. U.S.*, 7 C.I.T. 118, 124, No. 82-3-00421, 1984 WL 3749, *5 (C.I.T. Mar. 28, 1984)("A clerical mistake is a mistake by a clerk or other subordinate, upon whom devolves no duty to exercise judgment, in writing or copying figures or in exercising his intention. . . . Clerical errors are characterized by the absence of exercising judgment and intention, as when a mistake is made in copying or typing figures, or where figures have been transposed."); *Hynix Semiconductor America, Inc. v. U.S.*, 30 C.I.T. 103, 120-21, 414 F. Supp. 2d 1317, 1333 (C.I.T. 2006)(*Yamada* "is still relevant today"), noting the Federal Circuit recently cited

both *Yamada* and *Morimura Bros.* (*Ford Motor Co. v. U.S.*, 157 F.3d 849, 860 (Fed. Cir. 1998)("Thus, *Yamada* teaches that a subordinate acting contrary to binding instructions commits a clerical error. When a subordinate is given binding instructions on particular aspects of a task, no duty devolves upon him to exercise discretion or judgment in carrying out those aspects. . . . If the error had indeed been due in some measure to the party in interest or the supervisor--those upon whom a duty to devolve 'to exercise original thought or judgment' in the matter--then making a correction would amount to more than correcting 'a clerical error.'")).

   The panel in *Yamada* turned to Funk and Wagnalls New Standard Dictionary's definition of "clerical error:  "1.  A mistake in copying or writing.  2.  *Law*.  An error of inadvertence in a record or written instrument, which does not affect the intent." *Id.* The panel found in the case before it,

> It seems clear to us from the evidence that Mr. Blinn, acting in a clerical capacity, intended to carry out the instructions of Mr. Lawrence and file the certificate which Mr. Lawrence last gave him.  He intended to file a certificate which would show the new numbers.  Through carelessness, inadvertence, and mistake, his proper intention was improperly executed.  It was not the error of the party in interest or of Mr. Lawrence.  It was the error of the one upon whom no duty devolved to exercise original thought or judgment in determining what pending cases were to be listed.  It was not Blinn's duty to select the correct pending case.  This had been done for him by another whose instructions he was required to follow, and he intended to do so.

*Id.*

   With  a similar approach, the Fifth Circuit, in addressing

-26-

sentence enhancement under 21 U.S.C. § 851(a), turned to the following sources:

> Section 851 does not define "clerical error." However, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and case law applying those rules provide guidance on what constitutes clerical error. *See* Fed. R. Civ. P. 60(a)("Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected . . . ."); Fed. R. Crim. P. 36 ("Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected. . . ."); *see also American Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145 . . . (1958)("It is axiomatic that courts have the power and the duty to correct judgments which contain clerical errors or judgments which have issued due to inadvertence or mistake."); *Matter of West Texas Marketing Corp.*, 12 F.3d 497, 504 (5th Cir. 1994)("in sum, the relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or if instead a clerical error, a copying or computational mistake, which is correctable under the Rule."); *id.* ("It is only mindless and mechanistic mistakes, minor shifting of facts, and no new legal perambulations which are reachable through Rule 60(a)."); *Harcon Barge Co. v. D&G Boat Rentals, Inc.*, 784 F.2d 665, 668-69 (5th Cir. (en banc)(noting that scope of Rule 60(a) is "very limited" and "[c]orrection of an error of 'substantive judgment' therefore, is outside the reach of Rule 60(a)."), *cert. denied*, 479 U.S. 930 . . . (1986); *Jones v. Anderson-Tully Co.*, 479 F.2d 211, 212 (5th Cir. 1984)(holding that clerical errors "must be in the nature of recitation" and "not errors of substantive judgment"); *Dura-Wood Treating Co. v. Century Forest Indus., Inc.,* 694 F.2d 112, 114 (5th Cir. 1982)("Rule 60(a) finds application where the record makes apparent that the court intended one thing, but by merely clerical mistake or oversight did another. Such a mistake must not be one of judgment or even of misidentification, but merely of recitation, . . . mechanical in nature.").

*U.S. v. Steen*, 55 F.3d 1022, 1026 n.3 (5th Cir. 1995), *cert. denied*, 516 U.S. 1015 (1995); *see also U.S. v. Weaver*, 267 F.3d 231, 248

(3d Cir. 2001), *cert. denied*, 534 U.S. 1152 (2002).

The initial clerical mistake alleged here was the failure of the Arrow Client Services employee to place Liu's and five others' accounts, out of sixteen accounts in total, in "hold" status so that it would not be sold to a debt collection agency and collection efforts would not proceed against them.  According to Swanson's affidavit,

> In the event that an account was included in a sale file but should not have been, Arrow will typically receive an email from its sellers, like GE Money Bank, requesting to buyback an account.  Such emails would be directed to Arrow's Client Services department.  A seller may buyback an account for a variety of reasons, including bankruptcy, that the account is the subject of fraud, or that the account was previously paid, to provide a few examples.  The buyback request from the seller includes the account information, as well as the reason the seller is requesting to buyback the account. Upon receipt of the buyback request from the seller, an Arrow Client Services Representative will review the account to ensure that the account is eligible for buyback based on criteria provided in the purchase contract and the current status of the account.  Once the account has been deemed as "eligible for buyback," the Client Services Representative moves the account to a "hold" status in ARROW's collection system.

The affidavit indicates that the Client Services Representative does more than ministerially process requested buyback accounts without judgment or discretion.  Instead the affidavit suggests that he is supposed to make substantive decisions in determining whether each account forwarded to him by an email request meets the criteria in the purchase contract and what the current status is of each individual account, in other

words determine whether the account should be bought back.  Thus the employee's omission of not just the Liu account, but of five others raises significant material issues of fact as to both whether the omission was a "clerical error."

Furthermore, Swanson's affidavit demonstrates that Arrow had "a procedure" but does not show that it had a reasonable procedure in place to prevent the kind of error that occurred.  There is no evidence that it had a manual, or had training classes for the Credit Services representatives, or any oversight or check list or computer program that might catch such a significant omission. Thus there is a genuine issue of material fact as to whether Arrow employed reasonable procedures to prevent such mistakes.

Moreover, Plaintiff challenges other conduct, besides the failure to place the Liu account and five others in hold status, that does not fall within the parameters of "clerical error" and must be decided by a jury.  She claims that the Arrow Client Services Representative also erroneously advised the seller, GE Money Bank, that the Liu account had been repurchased.

For genuine issues of material fact regarding Defendants bona fide error defense, the Court denies summary judgment on the federal and state Fair Debt Collections Practices Act and the DTPA.

With regard to Plaintiff's fraud and negligent misrepresentation claims, the Court agrees with Defendants that Plaintiff has not met her burden of demonstrating reliance.  What

she is alleging is not reliance on the misrepresentation that she owed the delinquent debt, but on the fact that Defendants filed a lawsuit that required her to retain counsel to defend her and to demonstrate that the accusation was false.  Thus the Court grants Defendants summary judgment on these two claims.

Although Plaintiff's affidavit establishes that Equifax was informed about the delinquent and allegedly fraudulent account, Plaintiff produces no evidence supporting her claim that it was Defendants who reported the matter to Equifax, such that a reasonable party could return a verdict for her against Defendants at trial on her defamation and libel claim and Fair Credit Reporting Act claim.  She, herself, reported the fraud to the credit card company, which may well have reported it to Equifax, as could have the billing dentist.  Thus the Court grants Defendants summary judgment on the defamation and Fair Credit Reporting Act claims.

Plaintiff has raised genuine issue of material fact as to Defendants' knowledge, awareness and diligence, genuine issues of material fact also remain as to whether Defendants filed their suit in bad faith.  Thus the Court denies Defendants' motion as to the bad faith claim.

Plaintiff has not produced any evidence of malice or of "special damages" ("some physical interference with the claimant's person or property in the form of an arrest, attachment, injunction

or sequestration," *Yoonessi*, 286 S.W. 3d at 629 to support a malicious prosecution claim. Thus the Court grants Defendants summary judgment on that claim.

As for negligence in instituting the suit despite her continued challenge to the claim that she owed the debt and in failing to discontinue it for two months, Plaintiff has raised genuine issues of material fact as to when and what Defendants knew or should have know in investigating the matter the false debt charge. She presents evidence that Defendants received notice as early as February 5, 2007 that the account was fraudulent, but sixteen months later still filed suit against her. Thus the Court denies summary judgment on that claim.

While Plaintiff has raised a genuine issue of fact regarding negligence, the Court finds that Plaintiff has not met her burden on her gross negligence claim of producing evidence showing that Defendants' conduct involved an extreme degree of risk and likelihood of serious injury to plaintiff nor the requisite state of mind of Defendants (subjective awareness of the risk involved but conscious indifference to the rights, safety, or welfare of others), sufficient to constitute gross negligence.

Accordingly for the reasons indicated above, the Court

ORDERS that Defendants' motion for summary judgment (#23) is GRANTED as to Plaintiff's claims for fraud, negligent misrepresentation, defamation, violations of the Fair Credit

Reporting Act, malicious prosecution, and gross negligence.  The
Court further

ORDERS that Defendants' motion for summary judgment is DENIED
as to Plaintiff's claims for violation of the state and federal
Fair Debt Collection Practices Acts, and the DTPA and negligence.

**SIGNED** at Houston, Texas, this 17th day of May , 2010.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE